IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JOHANNA V.,

Plaintiff,

Civil Action No.
3:19-CV-0304 (DEP)

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

---

APPEARANCES: OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW OFFICE — PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

HON. GRANT C. JAQUITH — MOLLY CARTER, ESQ.
United States Attorney — Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on April 14, 2020, during a telephone conference conducted on the record. At the close of argument I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

1 This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated: April 15, 2020
Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------------x

JOHANNA V.,

Plaintiff,

vs. 3:19-CV-304

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---------------------------------------------x

Transcript of a **Decision** held during a Telephone Conference on April 14, 2020, the HONORABLE DAVID E. PEEBLES, United States Magistrate Judge, Presiding.

A P P E A R A N C E S

(By Telephone)

For Plaintiff: LACHMAN, GORTON LAW FIRM
Attorneys at Law
1500 East Main Street
Endicott, New York 13761-0089
BY: PETER A. GORTON, ESQ.

For Defendant: SOCIAL SECURITY ADMINISTRATION
Office of the General Counsel
JFK Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203
BY: MOLLY CARTER, ESQ.

*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8547*

(The Court and Counsel present by telephone.)

THE COURT: All right, thank you both for excellent presentations.

Plaintiff has commenced this action pursuant to 42 United States Code Sections 405(g) and 1383(c)(3) to challenge an unfavorable decision by the Commissioner of Social Security finding that plaintiff was not disabled at the relevant times and therefore ineligible for the benefits that she sought.

The background is as follows: Plaintiff was born in December of 1979 and is currently 40 years of age. She was born in Puerto Rico but migrated to the United States mainland in 2009. She was 34 years of age at the time of her alleged disability onset of April 1, 2014 and is currently 40 years old. Plaintiff stands 5 foot 3 inches in height and weighs somewhere between 155 and 170 pounds, depending on where you look in the record. Plaintiff is right-handed. She lives in Johnson City in an apartment with two daughters, ages 19 and 1. Plaintiff has a 12th grade education in Puerto Rico. She apparently received fairly poor grades, according to page 437 of the administrative transcript. She underwent additional training in the field of welding. Plaintiff has a driver's license but does not drive, she claims due to pain and neuropathy and also fear of falling asleep. Plaintiff reads and understands very little English,

according to pages 186 and 381, and was provided an interpreter at the hearing in this matter.

Plaintiff last worked in November of 2014. She stopped work at that time due to swollen feet, high blood pressure, and blood clots. She's worked in a labor temporary position, various temporary positions in the labor field, 1996 to 2012, she was an assembler from January to May of 2013, and a hotel housekeeper from October 2014 to November 2014.

Plaintiff suffers from several physical impairments including Type 2 diabetes which is described as somewhat difficult to control. She experiences neuropathy with that as well as pancreatitis. She also suffers from mastoiditis and lumbar lipomas. The primary care provider is Dr. Mala Ashok. Plaintiff has undergone a series of hospitalizations dating back to September 2015 when she was hospitalized in connection with diabetes and later that month for abdominal pain. She was hospitalized in July of 2015 when she had two lipomas surgically removed from her lumbar back area. She was also hospitalized in March of 2016 when she had two more lipomas removed. She was hospitalized for abdominal pain twice in April of 2016 and once in August of 2016. She was hospitalized with mastoiditis twice in March of 2017 extending into April of 2017, again, twice later in April of 2017. In May of 2017 she was hospitalized with left ear

pain; in August of 2017, again with mastoiditis; and September 2017 with abdominal pain and right ear pain; in October of 2017 with abdominal pain and pancreatitis, she suffered respiratory failure and had to be intubated on that occasion; also in November 2017 with pancreatitis. She testified at 809 that her ear pain, her right ear pain began March 2017, she underwent ear tube replacement. The indication was, in May of 2017, she would probably need a mastoidectomy, that's at 844, but according to 848, by 12/17 her hearing was intact.

Mentally, plaintiff suffers from anxiety and depression but has undergone no formal treatment other than telephone consultations with social workers. The evidence is equivocal as to whether she has made any suicide attempts. She told Dr. Krantweiss and Dr. Slowik, at 439 and 546 of the administrative transcript respectively, that she did attempt suicide. There's no indication in any of the records concerning that, and her treating physician, Dr. Ashok, opined at 515 that plaintiff did not exhibit any suicidal features.

In terms of medications, plaintiff has been prescribed Cymbalta, Percocet, gabapentin, amitriptyline, Levemir, and Prednisone.

In terms of activities of daily living, plaintiff is able to dress and groom herself, bathe, she does some

cooking and light cleaning, she shops with her daughter, watches television, she does not do laundry, she does some care for her baby. Plaintiff has in the past smoked and there's evidence that she may have quit on a couple different occasions. She smoked at least from 2000 to October of 2015. At one point she was experiencing smoking at one-and-a-half to two packs per day according to 555 and 546 of the administrative transcript. She resumed smoking apparently but quit again in October of 2 -- November of 2017 after her hospitalization. That's at page 198.

In terms of procedural history, plaintiff commenced this action on September -- I'm sorry, applied for Title II and Title XVI benefits on September 1, 2015, alleging an April 1, 2014 onset date. It was noted that a prior application for benefits by the plaintiff was denied on August 18, 2014. There was no appeal from that rejection.

In her function report, plaintiff claimed disability based on diabetes, carpal tunnel syndrome, back pain, thyroid, high blood pressure, high cholesterol, arthritis, diabetic neuropathy affecting hands and feet, anxiety, and depression.

The hearing was conducted on February 20, 2018 by Administrative Law Judge Thomas Cheffins to address plaintiff's application for benefits. The administrative law judge issued a decision on March 30, 2018 that was

unfavorable to the plaintiff. The Social Security Administration Appeals Council denied review on January 10, 2019. This action was commenced on March 6, 2019.

In his decision, ALJ Cheffins applied the familiar five-step sequential test for determining disability. He determined that plaintiff's date of last insurance status was December 31, 2022 but noted that would potentially have to be recalculated because there was some evidence of income that was not properly attributed to the plaintiff but was a result of identity fraud.

At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since April 1, 2014, again noting that any earnings beyond that were likely the result of identity theft.

At step two, ALJ Cheffins concluded that plaintiff suffers from severe impairments imposing more than minimal limitations on her ability to perform basic work activities, including diabetes mellitus Type 2, peripheral neuropathy, anxiety, and depression. He rejected many of the other claimed impairments as severe, including the lipomas, hypothyroidism, pancreatitis, mastoiditis, and others. He also noted that plaintiff is mildly obese and has, pursuant to Social Security Ruling 02.1p, considered the effects of that obesity on formulating, in formulating the residual functional capacity. He also rejected psychosis, panic

disorder, intermittent explosive disorder, and below average intellectual functioning, but has again considered the symptoms associated with those alleged conditions.

At step three, ALJ Cheffins concluded that plaintiff's conditions do not meet or medically equal any of the listed presumptively disabling conditions set forth in the Commissioner's regulations, specifically considering 9.00 and Social Security Ruling 14-2p concerning diabetes, and 12.04 and 12.06 concerning the mental limitations.

The administrative law judge next concluded that plaintiff retains the residual functional capacity or RFC to perform light work with additional limitations set forth at page 168 of the administrative transcript.

He next engaged in a two-step analysis of plaintiff's reports of her symptomology, indicated the weight that was afforded to the various medical opinions in the record.

At step four, ALJ Cheffins concluded that plaintiff did not have any past relevant work, and at step five, he concluded based on the testimony of a vocational expert that plaintiff is capable of performing the functions of a swatch clerk and a packing header. He noted that if she was capable of performing a full range of light work, the Medical-Vocational Guidelines, and specifically Grid Rule 202.16, would direct a finding of no disability.

As you know, my function is limited and the standard that applies is extremely deferential. The determination that I make must ensure that correct legal principles were applied and that the result was supported by substantial evidence. As the Second Circuit noted in *Brault v. Social Security Administration*, reported at 683 F.3d 443, this is an extremely stringent standard, it is more rigid than the clearly erroneous standard. Substantial evidence of course is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The Second Circuit also noted in *Brault* that this means once the ALJ finds a fact, that fact can be rejected only if a reasonable fact finder would have to conclude otherwise.

In support of her challenge to the Commissioner's determination, plaintiff contends that the administrative law judge failed at step two to find other impairments severe as meant by the regulations that relate to step two, including lipomas, pancreatitis, and mastoiditis. She also argues that the physical and mental components of the residual functional capacity are not supported, and at step five the determination is not supported because the residual functional capacity and the hypothetical that was posed to the vocational expert are erroneous.

Turning first to the step two determination, I know that that is a de minimus test, it is not extremely rigid.

The governing regulations provide that an impairment or combination of impairments is not severe if it does not significantly limit claimant's physical and mental ability to do basic work activities, that's 20 C.F.R. Section 404.1521(a). The section goes on to describe or define basic work activities to include the abilities and aptitudes necessary to do most jobs. It is a de minimus test, as the Second Circuit noted in *Dixon v. Shalala*, 54 F.3d 1019 from 1995. However, the mere presence of a disease or impairment is not, by itself, sufficient to establish a condition as severe. The backdrop, of course, is that it's plaintiff's burden to establish not only the existence of conditions but limitations on basic work activities flowing from those impairments.

There are really two issues raised in the step two argument. One is whether or not plaintiff has established, carried her burden of demonstrating that these three conditions imposed more than minimal limitations on the ability to perform basic work functions; and two, whether the durational limitation of 12 months is met.

In terms of the lipomas, there are only, as the Commissioner has argued, two discrete bouts of lipomas, they resulted in the surgical removal of two in 2015 and two more in 2016, no further evidence of recurring lipomas. There's also no evidence of the limitations imposed by those lipomas

on the plaintiff's ability to perform basic work activities and certainly not over 12 consecutive months, so I find no error in that regard.

In terms of the pancreatitis, there's limited reference to treatment of pancreatitis, including in October and November 2017. By December 20, 2017 it was noted in the administrative transcript, page 851, that the condition had much improved. It shows that it was secondary to the hypertriglyceridemia, and it suggests, the record suggests that it results from, it results from plaintiff's noncompliance with her medications and that once she was compliant, the condition improved. To the extent that it was caused by diabetes, it was noted by the administrative law judge that that condition was severe, but there's no evidence that the pancreatitis extended over 12 consecutive months, and I find no error there either.

With regard to mastoiditis, plaintiff received treatment from March of 2017 to September 2017. I note that she did not mention the condition either in her application for benefits or at the hearing when she was asked why she could not work. There does not appear to be any evidence that plaintiff carried her burden of demonstrating that the mastoiditis imposed limitations on her ability to perform work functions, but in any event there's no evidence to show that it resulted in inability to work for 12 consecutive

months.

I agree with the Commissioner that the administrative law judge did consider the durational requirements. That's clear from page 164, the last sentence where he notes that, "As the record does not demonstrate that the above-referenced conditions caused more than a minimal effect on the ability to perform basic work activities for a continuous period of 12 months, I find that during the relevant period herein, they were not severe." So he did consider those.

This is a case that is very similar to that facing Senior District Judge Lawrence E. Kahn in *Tunis v. Colvin*, 2015 WL 4643110, Northern District of New York case from 2015, where Judge Kahn noted that on a 20 C.F.R. Section 404.1505, an impairment must meet the durational requirements set forth in the regulations, and it must be expected to last for a continuous period of at least 12 months in order for the impairment to be considered severe. In that case he found that the cited conditions did not meet the durational requirements and I find likewise here.

Turning to the physical components of the residual functional capacity, as the Commissioner noted, there's no requirement that the RFC exactly mirror any particular medical opinion. In this case, however, it is -- does draw support from Dr. Jenouri's opinion. Although the

administrative law judge did add limitations that Dr. Jenouri -- were more stringent than those Dr. Jenouri found, it is undoubtedly, under *Veino v. Barnhart*, for the administrative law judge to weigh competing medical opinions and weigh -- decide how much weight to be given to each, and I find that -- I find no error. And certainly under *Brault*, I don't find that no reasonable fact finder could weigh that as the administrative law judge did. I understand that his opinion did predate the 2016, 2017 conditions and events, but again, there's no showing that the subsequent events resulted in limitations lasting more than 12 consecutive months sufficient to undermine Dr. Jenouri's conclusions.

Similarly, in connection with the mental RFC, there are competing opinions. Dr. Slowik spoke to it, there's a -- an opinion from a Dr. Krantweiss, but there is also an opinion from a treating source, Dr. Mala, that -- I'm sorry, Dr. Ashok, that doesn't seem to indicate any significant mental limitations. As the administrative law judge noted, exams of the plaintiff were routinely normal for mental status, she did not undergo any particularized psychiatric treatment, nor did she have any hospitalization for mental conditions. And so this is not a case where a nonexamining, namely the -- Dr. Fassler opinions were elevated over those of a treating source. Dr. Fassler did explain his reasoning and conclude at page 214 that the plaintiff retains the

ability to perform simple work on a sustained basis in a setting that does not require a great deal of interpersonal contact, and so I find that the mental components of the residual functional capacity are also supported by substantial evidence.

And of course the step five argument raised by the plaintiff is dependent upon a finding of an erroneous residual functional capacity. Because I find the RFC is supported by substantial evidence and the hypothetical posed to the vocational expert mirrors the residual functional capacity, I find that the Commissioner carried his burden at step five, and therefore I will grant judgment on the pleadings to the defendant in this case.

Thank you both for excellent presentations. These are obviously trying times, I appreciate your bearing with us and I hope that you all stay safe and healthy. Thank you.

MR. GORTON: Thank you, your Honor.

MS. CARTER: Thank you very much, your Honor.

(Proceedings Adjourned, 12:00 p.m.)

CERTIFICATE OF OFFICIAL REPORTER

I, JODI L. HIBBARD, RPR, CRR, CSR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, DO HEREBY CERTIFY that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 14th day of April, 2020.

/S/ JODI L. HIBBARD

JODI L. HIBBARD, RPR, CRR, CSR
Official U.S. Court Reporter